UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

EDDY STWAERD,

                        Plaintiff,

                                    **MEMORANDUM & ORDER**

        -against-                               09-CV-936 (PKC)

THE CITY OF NEW YORK, *et al.*,

                        Defendants.

-----------------------------------------------------------------x

PAMELA K. CHEN, United States District Judge:

      Plaintiff Eddy Stwaerd's ("Stwaerd") sole remaining claim in this case[1] is that Defendant, Officer Chris Thompson ("Officer Thompson"),[2] in his individual and official capacity, falsely arrested Stwaerd. Stwaerd's arrest was based on the allegations of his wife and the initial report of two other officers, which suggested that he had made harassing telephone calls to his wife after an earlier disagreement over his refusal to pay the couple's outstanding

---

[1] Judge Eric N. Vitaliano already dismissed with prejudice, and/or noted the withdrawal of, claims for "undue delay in arraignment" and municipal liability, pursuant to 42 U.S.C. § 1983 ("Section 1983") and state law, in the preceding, amended complaint. (Dkt. No. 26, at 1 & n.1.) The operative, second amended complaint only asserts a false arrest claim. (Dkt. No. 27 ("Compl.") ¶¶ 24-26.)

[2] Stwaerd also brought his false arrest claim against two "John Doe" officers in their individual and official capacities, but his failure to name these officers after discovery warrants their dismissal from this case. *See Davis v. Kelly*, 160 F.3d 917, 921 (2d Cir. 1998) ("[C]ourts have rejected the dismissal of suits against unnamed defendants described by roles, defendants identified only as 'John Doe's,' or an institutional defendant, *until the plaintiff has had some opportunity for discovery to learn the identities of responsible officials*.") (emphasis added; citations omitted).

cable bill. The Court now grants Officer Thompson's summary judgment motion (Dkt No. 52), dismissing this claim with prejudice.

I. Background[3]

In the operative, second amended complaint, Stwaerd claims that Officer Thompson falsely arrested him on a charge of aggravated harassment in the second degree. New York Penal Law § 240.30(2) provides that "[a] person is guilty of aggravated harassment in the second degree when . . . [w]ith intent to harass or threaten another person, he or she makes a telephone call, whether or not a conversation ensues, with no purpose of legitimate communication." *Id.* The central issue in deciding this summary judgment motion is whether the undisputed evidence shows that Officer Thompson had probable cause to arrest Stwaerd for this offense.

On the evening of May 23, 2008, Stwaerd and his then-wife, Nilsa Ware ("Nilsa"), had a telephone conversation about their unpaid cable bill. (Def.'s 56.1 ¶ 2.) When Stwaerd told Nilsa that he would pay the bill after receiving his next paycheck, his wife was displeased, though, according to Stwaerd, they did not fight. (Dkt. Nos. 57-1–57-6 ("Pl.'s Exs."), Ex. 2, at 28:10-31:13.)

---

[3] The Court construes any disputed facts in the light most favorable to Stwaerd, as the non-moving party, for purposes of Officer Thompson's summary judgment motion. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157-59 (1970) (Harlan, J.). However, where Stwaerd either (i) admits or (ii) denies without citing to admissible evidence certain of the facts asserted in Officer Thompson's Local Rule 56.1 Statement (Dkt. No. 53 ("Def.'s 56.1")), the Court may deem any such facts undisputed. *See* Local Rules of the United States District Courts for the Southern and Eastern Districts of New York 56.1(c)-(d); *see also Amnesty Am. v. Town of W. Hartford*, 288 F.3d 467, 470 (2d Cir. 2002) (Sotomayor, J.) ("Fed. R. Civ. P. 56 does not impose an obligation on a district court to perform an independent review of the record to find proof of a factual dispute.") (collecting cases). Standalone citations to "Def.'s 56.1" denote that the Court has deemed certain of Officer Thompson's asserted facts undisputed and also incorporate by reference any documents cited therein. Where relevant, however, the Court may cite directly to such documents.

The next morning, at approximately 7 AM, the New York City Police Department ("NYPD") received a 911 call from a Sprint PCS[4] cellular telephone number, 917-744-5910. (Dkt. Nos. 54-1–54-8 ("Def.'s Br. Exs."), Ex. B.)  The caller identified herself as "Nilsa."  (*Id.*)[5] The NYPD's records indicate that "Nilsa" reported her husband's verbal abuse, and requested that the police remove him from their residence at 969 East 100th Street in Brooklyn, New York. (*Id.*; Def.'s 56.1 ¶¶ 1, 4.)  The NYPD promptly dispatched Officer Evens Pierre-Louis ("Officer Pierre-Louis") and another officer (collectively, the "investigating officers") to the residence to investigate this reported "family dispute."  (Def.'s 56.1 ¶ 5.)

As one of the investigating officers called to the couple's residence, Officer Pierre-Louis's job was to speak with the "complaining victim," *i.e.*, Nilsa, and to prepare a "domestic incident report" based on the victim's allegations to bring back to the precinct.  (Pl.'s Ex. 3, at 36:22-37:4; Def.'s Br. Ex. C, at 16:13-17:12.)[6]  In this report, Officer Pierre-Louis summarized the results of the investigation:

> At T/P/O [*i.e.*, the time/place of occurrence][,] *C/V [i.e., the complaining victim] states she had an argument with her husband because he refused to pay the bills in the house. C/V states she just wants her husband out of the house.  C/V sustained no injuries.  C/V states her husband called her 35 times between 10 PM to 6 AM Saturday morning saying that he will not give her any money.*

---

[4]  "PCS" stands for "Personal Communications Services," which refers to the wireless technologies associated with cellular telephones.  47 C.F.R. § 24.5 (defining "PCS").

[5]  Stwaerd and Nilsa's home telephone number was 347-789-5299.  (Pl.'s Ex. 1 ¶ 11; Def.'s Br. Ex. D.)

[6]  During his deposition, Officer Thompson explained that domestic incident reports can be prepared by interviewing complaining victims, either when the officers investigate the incident *or* when the victims come to the precinct.  (Pl.'s Ex. 4, at 25:17-26:23.)  Although Stwaerd states that the investigating officers *also* interviewed him and other family members and searched Nilsa's cellular telephone (Pl.'s Ex. 1 ¶ 5), such information is not reflected anywhere in the domestic incident report that Officer Thompson reviewed for probable cause; only the information that Nilsa relayed to the investigating officers is reflected in this report.

3

(Def.'s Br. Ex. D (emphasis added).)[7]

In a contemporaneous, sworn statement appended to this report, Nilsa, the complaining victim, corroborated these results:

> *On 5/23/08[,] I took a 2nd job at night. Ed called me about 35 times between 10 pm an[d] [sic] 6 am Sat morning. He said he is not paying me $[.] [H]e [sic] is off of work for the next few days so he will sit here and harass me* because the cops can't do anything about it. *I told him to stop calling and harassing me and he said no* so I called the cops because I want him out.

(*Id.* (emphasis added).) In short, Nilsa complained that Stwaerd had made 35 telephone calls between the hours of 10 PM the evening before and 6 AM, for no other purpose except to harass her at work over the subject of paying the cable bill.

This report, however, also indicated that the investigating officers did not arrest Stwaerd "on-scene," and filled in the corresponding bubble for "No Offense Committed" as their reason for not doing so. (*Id.*) At his deposition, however, Officer Pierre-Louis testified that the marking of "No Offense Committed" was a "mistake," because this report clearly listed below an offense for "aggravated harassment." (Dkt. Nos. 59-1–59-3 ("Def.'s Reply Exs."), Ex. B, at 45:4-45:10.)[8]

Officer Thompson, thereafter, reviewed the investigating officers' domestic incident report. (Def.'s 56.1 ¶ 18.) As Officer Thompson testified, his job, as a "domestic violence officer" for the precinct, was to "read all domestic incident reports that come in," and, depending on the substance of report, to conduct a subsequent arrest. (Def.'s Br. Ex. F, at 11:21-12:24; Def.'s 56.1 ¶¶ 16-17.) On June 4, 2008, Officer Thompson also called the complaining victim,

---

[7] Stwaerd confirms that Nilsa's allegation to the investigating officers was that he had called her "while she was at work." (Pl.'s Ex. 1 ¶ 5.)

[8] When asked at his deposition, Officer Pierre-Louis could not recall why he and the other officer did not arrest Stwaerd on-scene. (Pl.'s Ex. 3, at 38:18-39:3.)

and Nilsa confirmed for him that "she felt threatened, alarmed and harassed" by Stwaerd's reported conduct. (Def.'s 56.1 ¶¶ 19-20.)

The same day, sometime in the afternoon, Officer Thompson arrested Stwaerd for second-degree aggravated harassment (New York Penal Law § 240.30(2)), based on all of the available information before him, *i.e.*, the investigating officers' domestic incident report, Nilsa's sworn statement, and Officer Thompson's follow-up telephone call with Nilsa. (Def.'s 56.1 ¶¶ 22-23.)[9] The proposed charge against Stwaerd, however, was dropped two days later. (*Id.* ¶ 24.)[10]

On March 5, 2009, Stwaerd filed suit. (Dkt. No. 1, at 1.) Several days after Judge Vitaliano dismissed all but Stwaerd's false arrest claim with prejudice (Dkt. No. 26, at 1 & n.1), Stwaerd filed the operative, second amended complaint. (Compl., at 9.) As of January 17, 2014, the parties fully-briefed Officer Thompson's summary judgment motion, now before the Court. (Dkt. No. 52, at 2.)

II. Discussion

    A. *Legal Standard*

To obtain summary judgment in his favor on a "claim *or defense*" in this case, the moving party must establish that "there is no genuine dispute as to any material fact," and, thus, that he is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (emphasis added). "Material" facts are legally-relevant ones, *i.e.*, facts that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (White J.).

---

[9] Officer Thompson does not appear to have been asked at his deposition about whether he considered the investigating officers' marking of "No Offense Committed" on the domestic incident report. (*See generally* Pl.'s Ex. 4; Def.'s Br. Ex. F.)

[10] As a matter of pure speculation, Stwaerd states that the arrest was manufactured by Nilsa's cousin, Deshawn Ware, who is an NYPD officer. (Pl.'s Ex. 1 ¶ 15.)

5

"Genuine" disputes exist "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Disputes over facts that are "merely colorable" or "not significantly probative," or involving a "scintilla of evidence in support of [the non-moving party's] position" that establishes "some metaphysical doubt," are *not* deemed "genuine." *Id.* at 249, 252; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (Powell, J.).

Once the moving party has met his initial burden of showing the *absence* of a genuine dispute as to any material fact relating to the subject claim or defense, the non-moving party must "do[] more than simply rely on the contrary allegation[s] in [his] complaint" to show the *presence* of such a dispute. *Adickes*, 398 U.S. at 159-60; *see also Champion v. Artuz*, 76 F.3d 483, 485 (2d Cir. 1996) (per curiam) (same). Indeed, "[t]he non-moving party may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that [his] version of the events is not wholly fanciful." *D'Amico v. City of N.Y.*, 132 F.3d 145, 149 (2d Cir. 1998), *cert. denied*, 524 U.S. 911 (1998); *see also Matsushita*, 475 U.S. at 587 ("[T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial.") (emphasis and quotations omitted); *Caldarola v. Calabrese*, 298 F.3d 156, 160-61 (2d Cir. 2002) (citing *Matsushita* with approval in reviewing, *inter alia*, a "§ 1983 claim for false arrest").

### B. False Arrest Claim

In this case, Officer Thompson seeks to obtain summary judgment, and the dismissal of Stwaerd's false arrest claim, by arguing that there is no triable issue as to the affirmative defense of probable cause. (Dkt. No. 55 ("Def.'s Br."), at 1, 5-9.) The Court agrees.

6

The *elements* of a Section 1983 claim for false arrest,[11] as to which the plaintiff would bear the burden of proof at trial, are "substantially the same" as those of a "claim for false arrest under New York law." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). Under New York law, the plaintiff namely must establish that "the defendant intentionally confined him without his consent and without justification." *Id.*[12] A warrantless arrest, as in this case, is presumed to lack such a justification. *See Curry v. City of Syracuse*, 316 F.3d 324, 335 (2d Cir. 2003) ("[W]hen an arrest is made without a warrant, the officer has acted outside the scope of the legal process and therefore a rebuttable presumption arises that such an arrest is unlawful.") (quotations omitted).

Probable cause rebuts this presumption of no justification, and is, thus, a "complete *defense* to an action for false arrest." *Weyant*, 101 F.3d at 852 (emphasis added) (quoting *Bernard v. U.S.*, 25 F.3d 98, 102 (2d Cir. 1994)) (adding that "[t]he existence of probable cause to arrest constitutes justification"); *see also Curry*, 316 F.3d at 335 ("The defendant has the burden of raising and proving the *affirmative defense of probable cause*.") (emphasis added; quotations omitted). The standard for probable cause is "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Weyant*, 101 F.3d at 852. This standard does *not* demand that the arresting officer "believe with

---

[11] A Section 1983 claim for false arrest stems from the Fourth Amendment "right to remain free from unreasonable seizures." *Caldarola*, 298 F.3d at 161.

[12] As Officer Thompson points out (Dkt. No. 58 ("Def.'s Reply"), at 9-10), Stwaerd misstates the law for false arrest claims by arguing the absence of exigent circumstances (Dkt. No. 56 ("Pl.'s Br."), at 13-15), which only pertains to unlawful entry claims not asserted in this case. *See Bowman v. City of N.Y.*, No. 08-CV-10123, 2010 WL 3932287, at *4 n.3 (S.D.N.Y. Sept. 30, 2010) (holding that the "legality of an entry," based on whether "exigent circumstances" exist, "is not an element of a false arrest claim," even though the entry "lead[s] to an alleged false arrest").

7

certainty that the arrestee will be successfully prosecuted." *Curley v. Vill. of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001).

The probable cause standard may be satisfied by information solely from a "person who claims to be the victim, and who has signed a complaint or information charging someone with the crime," *i.e.*, the complaining victim, "absent circumstances that raise doubts as to the victim's veracity." *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995), *cert. denied*, 517 U.S. 1189 (1996); *see also Curley*, 268 F.3d at 70 (same); *Miloslavsky v. AES Eng'g Soc'y, Inc.*, 808 F. Supp. 351, 355 (S.D.N.Y. 1992) ("The veracity of citizen complaints who are the victims of the very crime they report to the police is assumed."), *aff'd without opinion*, 993 F.2d 1534 (2d Cir. 1993), *cert. denied*, 510 U.S. 817 (1993). The identity of the complaining victim as the arrestee's wife does not cast a *de facto* cloud of doubt on her veracity. *See, e.g.*, *Fulton v. Robinson*, 289 F.3d 188, 195 (2d Cir. 2002) (upholding the "written complaint" of second-degree harassment by the arrestee's wife as probable cause for his arrest, because he "proffered no evidence to suggest that the officers had any reason to doubt [the wife's] veracity").

Here, Officer Thompson had before him information from Nilsa, the complaining victim and wife, in the form of the domestic incident report that reflected her allegations, her sworn statement, *and* their subsequent conversation via telephone on the day of Stwaerd's arrest. Indeed, this information would suggest to any "reasonable" person that Stwaerd had made 35 telephone calls to Nilsa while she was at work, intentionally to harass her, and not to engage in a meaningful conversation, about the couple's unpaid cable bill; and, thus, that Stwaerd had "committed" second-degree aggravated harassment in violation of New York Penal Law § 240.30(2). *Weyant*, 101 F.3d at 852; *see supra* Section I. Whether this information would

support the "successful[] prosecut[ion]" of Stwaerd is irrelevant to the probable cause determination. *Curley*, 268 F.3d at 70.

Stwaerd's primary reliance on the district court's decision in *Roberts v. City of New York*, 753 F. Supp. 480 (S.D.N.Y. 1990) (cited by Pl.'s Br., at 8-9), is misplaced. In *Roberts*, the district court held that the complaining victim's sole identification of the arrestees was not sufficient to establish the arresting officer's probable cause, where the victim, among other things, (i) "identified [the arrestees] several weeks after her attack," (ii) described her attackers in a way that reflected "'gross' disparities from [the arrestees'] physical characteristics," *and* (iii) had a significant "language barrier" with the arresting officer. *Id.* at 483-84. None of these circumstances are present in this case. On the contrary, Nilsa contemporaneously provided information to the investigating officers, did not have any difficulty identifying her husband as the culprit, and spoke perfect English. Nor did Officer Thompson have any other reason to doubt the veracity of Nilsa's allegations. Therefore, unlike *Roberts*, this case involves reliable information from the complaining victim sufficient to support Officer Thompson's finding of probable cause.[13]

---

[13] Stwaerd argues that the complaining victim's information was unreliable, as it was improbable that Nilsa would have held two jobs, *i.e.*, one that "ended at 6 am in the morning" and another that required her to "work[] regularly from 9 am to 5 pm daily." (Pl.'s Br., at 8-10.) This argument amounts to "speculation": even assuming that Nilsa worked every day at one job from 9 AM to 5 PM and at a second job from 10 PM to 6 AM, this fact would not provide a basis for suggesting that Officer Thompson should have questioned the "veracity" of Nilsa's allegations, as it is hardly impossible, or even uncommon, for people to work such hours, especially when, as indicated by the evidence here, Nilsa and Stwaerd were struggling to pay their bills. *D'Amico*, 132 F.3d at 149; *Singer*, 63 F.3d at 119. Rather, the "hard evidence," *e.g.*, Nilsa's sworn statement and the fact that her 911 call was made from a cellular telephone and not the couple's home telephone, suggests that Nilsa was not at home, and possibly working, when she called 911 to report Stwaerd's harassing conduct. *D'Amico*, 132 F.3d at 149; *see supra* Section I.

The fact that Officer Thompson did not endeavor to *further* investigate other sources of information to confirm Nilsa's story does not undermine the existence of probable cause to arrest Stwaerd. (*See* Pl.'s Br., at 10-12 (arguing that Officer Thompson "did not even speak to" the investigating officers or "verify" Nilsa's "phone record"); Pl.'s Ex. 4, at 53:6-53:25 (same).) It is axiomatic that, "[o]nce a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest." *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997); *see also Curley*, 268 F.3d at 70 (holding that a "more thorough investigation" was unnecessary, even where it "might have cast doubt upon the basis for the arrest"); *Panetta v. Crowley*, 460 F.3d 388, 398 (2d Cir. 2006) ("Once an officer has probable cause, he or she is neither required nor allowed to continue investigating, sifting and weighing information.") (quotations omitted). Of course, in his investigation, the officer "may not disregard plainly exculpatory evidence" available to him. *Panetta*, 460 F.3d at 395; *see also Garcia v. Does*, __ F.3d __, 2014 WL 4099270, at *8 (2d Cir. Aug. 21, 2014) (quoting *Hodgkins ex rel. Hodgkins v. Peterson*, 355 F.3d 1048, 1061 (7th Cir. 2004), for the proposition that police officers "may not ignore" any "conclusively established evidence" of the arrestees' innocence); *cf. Russo v. City of Bridgeport*, 479 F.3d 196, 208 (2d Cir. 2007) (holding that a Fourth Amendment violation could occur when incarceration was due to the police's "failure to perform the simple task of checking" exculpatory evidence already in their possession), *cert. denied*, 552 U.S. 818 (2007). But, no such evidence was ignored by Officer Thompson in this case.

---

Stwaerd also argues that Officer Thompson's telephone call with Nilsa was unreliable, if not concocted, information, since Officer Thompson did not have "[Nilsa's] cell or work number" and, thus, had no way of calling her. (Pl.'s Br., at 9-10.) This argument is speculative as well. Again, the evidence suggests that Nilsa previously called 911 from her cellular telephone, the number for which the NYPD had in its records from the call. *See supra* Section I.

Although Stwaerd claims that the investigating officers interviewed him and other family members, and also searched Nilsa's cellular telephone, on the date of the investigation, the domestic incident report completed by these officers contained no information relating to those purported lines of inquiry. *See supra* note 6. Officer Thompson, thus, could not have *"disregard[ed]"* that information, whether exculpatory or not, in determining probable cause, since it was not in the report that he reviewed. *Panetta*, 460 F.3d at 395 (emphasis added); *see, e.g.*, *Caldarola*, 298 F.3d at 162 ("When determining whether probable cause exists courts 'must consider those *facts available to the officer* at the time of the arrest and immediately before it.'") (emphasis added) (quoting *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 569 (2d Cir. 1996)). In reality, Stwaerd's argument regarding the additional on-scene interviews and telephone search is no different than his argument that Officer Thompson should have conducted his own investigation and spoken to the investigating officers directly before arresting Stwaerd, and, thus, fails for the same reason as previously discussed.

Furthermore, even if Stwaerd's conflicting statements to the investigating officers *were* included in this report, these statements would not have constituted evidence that Officer Thompson wrongly disregarded. *See, e.g.*, *Panetta*, 460 F.3d at 398 ("[The arresting officer's] decision not to heed [the arrestee's] assertions [of innocence] . . . did not constitute a disregard for exculpatory evidence sufficient to eliminate probable cause."); *Curley*, 268 F.3d at 70 ("[T]he arresting officer does not have to prove [the arrestee's] version [of the events] wrong before arresting him.").

In addition, the fact that the investigating officers filled in the "No Offense Committed" bubble on the domestic incident report was not *"plainly"* exculpatory information that, in itself, undermined the probable cause to arrest Stwaerd, particularly considering all of the other

information evidencing his harassing conduct. *Panetta*, 460 F.3d at 395 (emphasis added). In the same report, these officers specifically cited "aggravated harassment" as Stwaerd's offense. *See supra* Section I. The report also provided a narrative describing Stwaerd's conduct in support of the conclusion that he had committed this offense. *Compare with Loria v. Gorman*, 306 F.3d 1271, 1292 (2d Cir. 2002) (holding that the arresting officer should not have based his finding of probable cause on another officer's report, where the report failed to include even a "narrative of events"). Moreover, Officer Thompson personally verified the reported allegations with Nilsa before arresting Stwaerd. Officer Thompson, therefore, did not err in his finding of probable cause, despite the fact that this bubble had been filled in.

Finally, Stwaerd's theory that Officer Thompson arrested Stwaerd as a favor to a fellow NYPD officer, *i.e.*, Nilsa's cousin, is not only pure speculation, but immaterial. (*See* Pl.'s Br., at 12 ("[I]t is clear that Officer Thompson was motivated to arrest [Stwaerd] for reasons other than the 5/24/08 complaint allegedly made by Nilsa Ware. We [believe] [sic] this arrest has a lot do with Officer Deshawn Ware's relationship, or lack of it, with [Stwaerd].").) The possible motivations of the arresting officer are "not a consideration in assessing probable cause." *Singer*, 63 F.3d at 119.

Accordingly, the Court finds that Officer Thompson has demonstrated the absence of an issue for trial with respect to the probable cause defense, thus warranting the dismissal of Stwaerd's false arrest claim.[14]

---

[14] Given the Court's ruling, there is no need to reach the qualified immunity issue. *WWBITV, Inc. v. Vill. of Rouses Point*, 589 F.3d 46, 52 (2d Cir. 2009) ("Because we conclude that there was no violation of the plaintiffs' constitutional rights, we do not reach the issue[] of qualified immunity[.]"); (*see* Def.'s Br., at 1, 10-11 (arguing for qualified immunity in the alternative)). However, if the Court were to address this issue, it would conclude that Officer Thompson possessed *arguable* probable cause to conduct the arrest, in that "officers of

III. Conclusion

For the reasons set forth above, the Court GRANTS Officer Thompson's summary judgment motion, and, thus, DISMISSES *with* prejudice Stwaerd's false arrest claim. The Clerk of the Court is directed to enter judgment accordingly, and close this case.

SO ORDERED:

/s/ Pamela K. Chen
PAMELA K. CHEN
United States District Judge

Dated: September 4, 2014
       Brooklyn, New York

---

reasonable competence could disagree on whether the probable cause test was met." *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991), *cert. denied*, 505 U.S. 1221 (1992).